IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

NAFTA TRADERS, INC.,      §
     §
  *Plaintiff-Counterdefendant*,   §
     §
v.      §     Civil Action No. 3:19-cv-00915-N
     §
ADIDAS AMERICA, INC.,      §
     §
  *Defendant-Counterclaimant*.   §

## MEMORANDUM OPINION AND ORDER

This Order addresses Plaintiff Nafta Traders, Inc.'s ("Nafta") three outstanding motions relating to discovery in its dispute with Defendant adidas America, Inc. ("adidas"). Pl.'s Mot. Compel Produc. [87], Pl.'s Obj. Def.'s Resp. Mot. Compel [95], and Pl.'s Mot. Sanctions [101]. The Court grants in part and denies in part the motion to compel, overrules the objection, and denies the motion for sanctions.

### I. THE UNDERLYING DISPUTE, NAFTA'S DISCOVERY REQUESTS, AND THE MOTIONS BEFORE THE COURT

This action is one of two lawsuits pending before this Court related to a contract (the "Agreement") for the sale of clearance apparel and footwear between adidas, a sportswear company, and Nafta, a merchandise liquidator and reseller.[1] The Agreement provided that for an Initial Term of six years, adidas would not sell its inventory in three

---

[1] The second of the two cases is *adidas America, Inc. v. Shoebacca Ltd.*, No. 3:20-CV-03248-N (N.D. Tex. filed Oct. 26, 2020). For further background on this litigation, *see generally Nafta Traders, Inc. v. adidas America, Inc.*, 2022 WL 891119 (N.D. Tex. 2022) (granting in part and denying in part judgment on the pleadings).

categories of merchandise ("Exclusive Merchandise") to any purchaser besides Nafta and that Nafta would purchase all quantities that adidas made available to it.[2]  Pl.'s App. Supp. Mot. Compel, Ex. 1, Sale Agreement App. 1–7 [90-2].  Those categories were worn and defective ("W&D") footwear, W&D apparel, and sample footwear.  *Id.*  adidas was also required to sell Nafta minimum guaranteed quantities of three other categories of merchandise ("Restricted Merchandise").  *Id.* at App. 10–11.  Those categories were sample apparel, sample hardgoods and accessories ("HG&A"), and "Hash Footwear," defined as stock keeping units ("SKUs") containing less than 100 pairs or incomplete size runs of certain types of footwear.  *Id.*

Following the Initial Term, there was a three-year period in which Nafta held a right of first refusal ("ROFR") to almost all covered merchandise.  *Id.* at App. 38–41; Pl.'s App. Supp. Mot. Compel, Ex. 2, First Amendment and Extension of Sale Agreement App. 55 [90-3].  The contract prohibited adidas from selling Restricted Merchandise to certain unpermitted purchasers for its entire nine-year term.  Sale Agreement App. 7–10, 20.

Nafta alleges that adidas breached the contract by: (1) failing to sell all Exclusive Merchandise to Nafta during the Initial Term; (2) diverting Exclusive Merchandise to other purchasers; (3) selling Restricted Merchandise to unpermitted purchasers; and (4) selling both types of merchandise in violation of Nafta's right of first refusal.  Pl.'s Br. Mot. Compel 9.  Throughout this litigation, the parties have propounded numerous discovery requests.  *Id.* at 10–14; Def.'s Resp. Mot. Compel 11–12.

---

[2] The parties dispute the scope of merchandise that adidas was obligated to sell to Nafta. *See infra* Part II.

The basis of Nafta's motion to compel is its contention that adidas has improperly withheld data relating to its inline inventory,[3] W&D merchandise, and sales of Exclusive Merchandise and Hash Footwear as well as documents relevant to adidas' counterclaims. Pl.'s Br. Mot. Compel 14, 26–27.   Nafta also claims that adidas has not responded adequately to several interrogatories regarding the grading and classification of merchandise.[4]  *Id.* at 25–26.  adidas counters that it has produced all existing information that it believes to be relevant and that its answers to the disputed interrogatories are responsive based on its interpretation of the scope of the Agreement, discussed further *infra* Part II.  Def.'s Resp. Mot. Compel 4, 23.

In support of its position that all relevant discovery had already been produced, adidas submitted a declaration by a paralegal, Greg Scott, employed by adidas' outside counsel.  Def.'s App Supp. Resp. Mot. Compel, Decl. of Greg Scott App. 382 [94-1].  Nafta objected to the declaration on suspicion of the paralegal's personal knowledge as well as on grounds that certain statements regarding relevance were conclusory and lacking foundation.  Pl.'s Obj. 5–6 [95].  In its objection, Nafta requests that the Declaration be excluded, or alternatively, that Nafta be allowed to depose Mr. Scott.  *Id.*  adidas responded with a supplemental declaration containing greater detail about Mr. Scott's paralegal experience and methodology in the instant case.  Def.'s Resp. Obj., Ex. 1, Suppl. & Am. Decl. of Greg Scott [98-1].

---

[3] "Inline" refers to adidas' full-price, current season inventory.  Pl.'s App. Supp. Mot. Compel 192 n.1 [89-1].
[4] Nafta seeks production and answers in response to more than 100 requests for production and interrogatories, outlined in detail in its motion to compel.

During the pendency of these motions, Nafta also filed a motion for sanctions based on a 2021 deposition's bringing to light the existence of substantial historical inventory data that adidas had not yet produced.  Pl.'s Br. Mot. Sanctions 17–18.  adidas contended then and maintains now that it did not find the data relevant under its interpretation of the Agreement.  Def.'s Resp. Mot. Sanctions 6–7 [110].  The parties continued to confer following those depositions and adidas produced additional inventory data.  *Id.* at 26.

For the reasons set forth below, the Court agrees that Nafta is entitled to most of the discovery it seeks, but its objection to the Declaration lacks merit, and sanctions are unwarranted.

## II.  THE COURT GRANTS IN PART THE MOTION TO COMPEL

Federal Rule of Civil Procedure 26 allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  FED. R. CIV. P. 26(b)(1).  Information within the scope of Rule 26(b) "need not be admissible in evidence to be discoverable."  *Id.*  A litigant may request the production of documents falling "within the scope of Rule 26(b)" from another party if the documents are in that party's "possession, custody, or control."  FED. R. CIV. P. 34(a).

To enforce discovery rights, a "party seeking discovery may move for an order compelling an answer, designation, production, or inspection."  FED. R. CIV. P. 37(a)(3).  The Fifth Circuit requires the party seeking to prevent discovery to demonstrate with specificity why the discovery is irrelevant, overly broad, burdensome, or oppressive.  *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990); *see also Merrill v. Waffle House, Inc.*, 227 F.R.D. 475, 476 (N.D. Tex. 2005).  If the party

opposing a motion to compel carries its burden, "[t]he party seeking discovery . . . may well need to make its own showing of many or all of the proportionality factors . . . in opposition." *Marable v. Dep't of Commerce*, 2019 WL 4689000, at *3 (N.D. Tex. 2019).

Courts construe relevance broadly, as a document need not, by itself, prove or disprove a claim or defense or have strong probative force to be relevant. *Samsung Elecs. Am. Inc. v. Yang Kun Chung*, 321 F.R.D. 250, 280 (N.D. Tex. 2017). A district court has wide discretion to supervise discovery, however, and may limit discovery if it would be unreasonably cumulative, could be obtained more easily from a different source, is not proportional to the needs of the case, or if the burden or expense of proposed discovery outweighs its potential benefit. FED. R. CIV. P. 26(b)(2)(C); *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 436 n.114 (5th Cir. 1990).

Several of adidas' objections to Nafta's discovery requests turn primarily on contract interpretation. adidas asserts its own interpretation of ambiguous terms in the Agreement, such as the merchandise covered, the parties' obligations, and damages in the event of its breach, then argues that the productions Nafta seeks are irrelevant in light of adidas' preferred interpretations. *See* Def.'s Resp. Mot. Compel 14–19 (disputing how to define "inventory" under the Agreement), 7, 19–20 (disputing the scope of the merchandise adidas was obligated to sell), 8 (disputing damages applicable during the ROFR Term); *see also* Pl.'s Reply Mot. Compel 2–4 [96-1]. But the interpretation of these provisions goes to the heart of whether adidas indeed breached the Agreement as Nafta alleges, and "discovery is not meant to be the setting for the Court to dispose of claims." *Brown v. Bridges*, 2015 WL 410062, at *8 (N.D. Tex. 2015). "Rather, the Court must look to

ORDER – PAGE 5

whether the information sought can have any possible bearing on a claim or defense in this case." *Great Lakes Ins., S.E. v. Gray Grp. Invs., LLC*, 2021 WL 7267752, at *6 (E.D. La. 2021); *see also Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978) (Relevance encompasses "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in this case."). Accordingly, at this stage, relevant information is properly understood as that which would bear on the development of *either* parties' theories of the case.

The Court now turns to whether adidas has fulfilled its obligation to demonstrate each category of information that Nafta requests is either (1) irrelevant not only to its own interpretation of the Agreement, but also Nafta's, or (2) disproportionate to the needs of the case as overbroad or unduly burdensome.

### A.  *Inline Inventory Data*

Nafta asks the Court to compel adidas to produce "[d]ata identifying adidas' inventory of footwear in its Inline channel during the Initial Term and ROFR Period," which "would allow the parties and Court to identify (a) which SKUs of adidas footwear became Hash Footwear, and (b) when." Pl.'s Br. Mot. Compel 14; *see also* Pl.'s Mot. Compel 2 (identifying disputed requests for production).

adidas' relevance objections to this request are grounded only in its own interpretation of the Agreement. It argues that inline channel data, including data on physical stock contained in adidas' warehouses, has nothing to do with the calculation of inventory that was "available to promise" ("ATP") and that Nafta was never entitled to inline products. Def.'s Resp. Mot. Compel 14. Further, adidas contends that ATP data

ORDER – PAGE 6

cannot be recreated, and thus it cannot be compelled to produce what does not exist.  *Id.* at 19.  But Nafta sets forth a broader interpretation of the inventory to which it had purchase rights, dependent on "on-hand" inventory metrics as well as ATP and possibly inclusive of inline merchandise.  Pl.'s Reply Mot. Compel 3–4 n.2, 4–7.  According to Nafta, inline channel data would shed light on the scope of adidas' Hash Footwear inventory, which, when paired with sales records, would assist in determining whether adidas sold any of that type of Restricted Merchandise to unpermitted purchasers or violated Nafta's ROFR in breach of the Agreement.  Pl.'s Br. Mot. Compel 12–13.  Further, if adidas engaged in unauthorized transactions, the Agreement provides for stipulated damages dependent on quantity sold.  Sale Agreement §§ 12.h.3, 13.

As already explained, the Court should delay ruling on interpretation disputes until full discovery and presentation of the evidence can be had; at this stage, clever readings of contractual terms are no magic shield against discovery of relevant information.  adidas insists that the information sought would be irrelevant if the contract should be properly interpreted as it believes, but adidas has not directly disputed that the data would be relevant should Nafta's theories ultimately prevail.  adidas' attempt to construe Nafta's inline channel data request as irrelevant is insufficient to defeat the motion to compel.  *See, e.g.*, *Entm't USA, Inc. v. Moorehead Communications, Inc.*, 2013 WL 5308108, at *1 (N.D. Ind. 2013) (granting a motion to compel when the evidence sought would be relevant to damages in the event that the court agreed with the movant's interpretation of the contract); *Lenker v. Nat'l Serv. Indus., Inc.*, 2006 WL 783372, at *1 (S.D. Ohio 2006) (denying reconsideration of magistrate's order granting motion to compel on same rationale).

ORDER – PAGE 7

Nor has adidas demonstrated that the request is disproportionate to the needs of the case. Stating the number of documents produced thus far, Def.'s Resp. Mot. Compel 11–12, does not insulate adidas from its burden to explain why responding to this specific request for on-hand inventory data would be unduly burdensome. adidas has not articulated any particular burden on its time or financial resources that it would incur by responding.

Because adidas has not explained why the requested inline data is irrelevant beyond its own narrow interpretation of the Agreement or why the specific request is overly broad, burdensome, or oppressive, the Court grants the motion to compel responses to this set of requests. In addition to any "push lists" and "clearance/closeout lists" already produced, *id.* at 11, adidas must produce all other existing nonprivileged "[d]ata identifying adidas' inventory of footwear in its Inline channel during the Initial Term and ROFR Period," not limited to ATP inventory but also on-hand inventory, as is responsive to the requests outlined in Nafta's motion to compel. Pl.'s Mot. Compel 2.

### B. W&D Merchandise Data

Nafta asks the Court to compel adidas to produce:

Inventory, return, grading, and sales data and records . . . identifying (a) the quantities and grades of footwear and apparel constituting W&D Footwear and W&D Apparel accumulated by adidas during the Initial Term and ROFR Period, (b) the quantities of such items that adidas sold to purchasers other than Nafta, and (c) the quantities of such items that adidas donated, destroyed, or otherwise disposed of.

Pl.'s Br. Mot. Compel 14; *see also* Pl.'s Mot. Compel 2 (identifying disputed requests for production and interrogatories).

Again, adidas' objections to this set of requests rely on its own understanding of the W&D merchandise to which Nafta was entitled. adidas employed a grading system for its damaged or defective merchandise: items were classified, best to worst, as A-Grade, B-Grade, C-Grade, or factory/scrap, and the parties dispute whether Nafta had purchase rights to B-Grade merchandise. Def.'s Resp. Mot. Compel 9–10; Pl.'s Reply Mot. Compel 9. The parties also dispute Nafta's rights to merchandise that was identified as damaged prior to sale in the first instance and thus never returned. Def.'s Resp. Mot. Compel 20; Pl.'s Reply Mot. Compel 8. Further, Nafta argues that even if A- or B-grade merchandise was not covered by the Agreement, items that it would have been entitled to purchase may have been misclassified, warranting production for identification purposes. Pl.'s Reply Mot. Compel 8–9.

For the reasons already discussed, adidas' effort to avoid producing W&D records by offering a narrow interpretation of the Agreement's coverage is unavailing. It is too early in this litigation to conclusively determine whether Nafta or adidas is correct as to the parties' understanding of the scope of the W&D merchandise definition. Nafta has explained why the data sought would assist in recreating the classification and sale or other disposal of Exclusive Merchandise to determine whether breach occurred and, if so, to calculate damages. Pl.'s Br. Mot. Compel 20–23. Because adidas has not articulated specific proportionality objections to this set of requests, the Court grants the motion to compel. adidas must turn over any not-yet-produced records of W&D merchandise inventory, returns, grading, or sales during both the Initial Term and ROFR Period.

ORDER – PAGE 9

Because Interrogatory No. 18 in Nafta's Second Set of Interrogatories and Nos. 19 (23) and 20 (24) in Nafta's Third Set "relate to the same grading and return issues" as the W&D-related requests for production, Pl.'s Br. Mot. Compel 25, the relief granted resolves Nafta's additional request to compel adidas to respond.  The Court denies additional relief as to these Interrogatories.

### C.  Sales Data

In addition to the inventory and sales records requests already granted, Nafta asks the Court to compel adidas to produce "[r]ecords showing adidas' sales of Exclusive Merchandise and Hash Footwear, from both its inline and clearance channels," which "would allow the parties and Court to identify Diversions of Exclusive Merchandise, Unpermitted Sales of Hash Footwear, and Nafta's resulting damages."  Pl.'s Br. Mot. Compel 14; *see also* Pl.'s Mot. Compel 2–3 (identifying disputed requests for production). adidas has already produced "all sales of clearance product where the quantity sold in a given SKU is fewer than 100 units" and sales of all products at a discount of 70 percent or more, which "could be associated with an increased likelihood that the product was part of an incomplete size run."  Def.'s Resp. Mot. Compel 22.

The Court agrees with adidas that the sales records already produced sufficiently capture the disposition of Hash Footwear, rendering further productions needlessly burdensome.  *Id.* at 22–23.  Further, the Court has already granted Nafta relief as to sales records of W&D Merchandise.  However, Exclusive Merchandise also includes sample footwear, which does not appear to be covered by the productions adidas references.  To the extent additional records of sales of sample footwear exist and have not yet been

ORDER – PAGE 10

produced, adidas must produce them; the Court otherwise denies relief as to this set of requests.

### D.  Data Related to adidas' Counterclaims

Nafta asks the Court to compel adidas to produce "records on adidas' monitoring and knowledge of sales of adidas merchandise on third-party marketplaces, such as Amazon and eBay," Pl.'s Mot. Compel 3, which Nafta contends is "relevant to [its] defenses of waiver and estoppel and to adidas' alleged damages for Nafta's purported breaches of the Agreement."  Pl.'s Br. Mot. Compel 27; *see also* Pl.'s Mot. Compel 3.

Because adidas' counterclaims relate to the behavior of Nafta and its affiliates, the parties do not dispute the relevance of records regarding their activity on third-party marketplaces.  Pl.'s Br. Mot. Compel 27; Def.'s Resp. Mot. Compel 24.  However, the Court agrees that the relevance of this set of requests does not extend to records of unrelated entities.  Def.'s Resp. Mot. Compel 24.  The Court grants the motion to compel only with respect to Nafta and its affiliates.  To the extent that adidas possesses documents relating to its monitoring or knowledge of Nafta's or its affiliates' sales activities on third-party marketplaces, and which have not yet been produced, the motion is not moot and adidas must produce them.  However, adidas need not produce records of the same regarding other nonaffiliated entities.

### III.  THE COURT OVERRULES NAFTA'S OBJECTION TO ADIDAS' SUPPLEMENTAL DECLARATION

The contents of a declaration must be based on personal knowledge.  *Lee v. Metrocare Servs.*, 980 F. Supp. 2d 754, 762 (N.D. Tex. 2013) (collecting cases).  An

ORDER – PAGE 11

employee's personal knowledge "may be demonstrated by showing that the facts stated 'reasonably' fall within [his or her] 'sphere of responsibility.'" *Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012) (quoting *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 530 (5th Cir. 2005)) (internal quotations omitted). The Supreme Court has recognized that paralegals personally carry out litigation-related tasks such as document production, *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989), and lower courts regularly accept sworn statements from paralegals regarding compliance with discovery rules. *See, e.g.*, *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991); *In re Nevarez*, 488 B.R. 332, 337 (Bankr. E.D. Tex. 2013); *Jackson v. Cavalry Portfolio Servs., LLC*, 2014 WL 517490, at *2 (E.D. Mo. 2014).

A statement within the declaration that it is based on personal knowledge can overcome evidentiary objections. *Kilmon v. Saulsbury Indus., Inc.*, 2017 WL 10729148, at *2 (W.D. Tex. 2017). However, it is insufficient for a paralegal to provide a conclusory affidavit that fails to detail the search procedures followed. *Am. Mgmt. Servs., LLC v. Dep't of the Army*, 842 F. Supp. 2d 859, 867–68 (E.D. Va. 2012) (citing *Prison Legal News v. Lappin*, 603 F. Supp. 2d 124, 127 (D.D.C. 2009)). Personal knowledge deficiencies may be cured by additional supplemental declarations. *See, e.g.*, *Am. Mgmt. Servs.*, 842 F. Supp. 2d at 868.

To the extent that Mr. Scott's initial declaration lacked sufficient detail regarding the search procedures followed in identifying responsive documents, the Supplemental Declaration corrects its deficiencies. In the Supplemental Declaration, Mr. Scott states his experience working on discovery matters and elaborates on the steps counsel took to

ORDER – PAGE 12

determine which records were relevant, including which email boxes they searched and the criteria they used.  This is sufficient to establish his personal knowledge, which in turn properly lays a foundation for his descriptions with which Nafta takes issue.  *See Conceal City, LLC v. Looper Law Enforcement, LLC*, 2011 WL 5557421, at *9 n.10 (N.D. Tex. 2011).  The Court accordingly overrules Nafta's objection to the Declaration.  Further, finding that personal knowledge has been sufficiently established obviates the need for a limited-purpose deposition on the subject, and the Court denies Nafta's alternative request for leave to do so.  *See IberiaBank v. Previty Surgical PLLC*, 2017 WL 3393952, at *6 (S.D. Tex. 2017) (denying leave to depose because there was no "plausible basis to believe that additional discovery would uncover facts material to deciding the existence or extent of the defendants' liability").

## IV.  THE COURT DENIES THE MOTION FOR SANCTIONS

### A.  *The Court's Authority to Impose Sanctions*

District courts have power under various provisions of the Federal Rules of Civil Procedure, *see, e.g.*, FED. R. CIV. P. 11, 26, 37, as well as their own inherent authority "to punish bad faith conduct occurring during litigation."  *Thomas v. Napolitano*, 2012 WL 13019644, at *2 (N.D. Tex. 2012).  Courts "wield their various sanction powers at their broad discretion."  *Topalian v. Ehrman*, 3 F.3d 931, 934 (5th Cir.1993) (collecting cases).

Rule 37(a)(5)(A) governs the apportionment of expenses following a successful motion to compel.  The Court is required to grant a request for reasonable expenses incurred in making a successful motion, but a Court must not grant expenses where the movant prematurely sought judicial intervention, the opposing party's objections were

"substantially justified," or an award of expenses is unjust.  FED. R. CIV. P. 37(a)(5)(A).
Substantial justification exists where "reasonable people could differ as to the
appropriateness of the contested action."  *Heller v. City of* Dallas, 303 F.R.D. 466, 477
(N.D. Tex. 2014) (quoting *De Angelis v. City of El Paso*, 265 F. App'x 390, 398 (5th Cir.
2008)) (cleaned up).  If the motion is granted in part and denied in part, the court may
apportion expenses for the motion at its discretion.  FED. R. CIV. P. 37(a)(5)(C).

Sanctions are also available for violations of Rule 26(g), which provides that " every
discovery request, response, or objection must be signed by at least one attorney of record,"
and signing "certifies that to the best of the person's knowledge, information, and belief
formed after a reasonable inquiry" that the document has a nonfrivolous legal basis, is not
"interposed for any improper purpose," and is "neither unreasonable nor unduly
burdensome or expensive."  As with expenses under Rule 37, the standard for Rule 26(g)
sanctions is also whether the violation was substantially justified.  FED. R. CIV. P. 26(g)(3).

When considering whether to impose discovery sanctions, courts consider "(1) the
reasons why the disclosure was not made; (2) the amount of prejudice to the opposing
party; (3) the feasibility of curing such prejudice with a continuance of the trial; and (4)
any other relevant circumstances."  *United States v. Garza*, 448 F.3d 294, 299–300 (5th
Cir. 2006).  The Court "should impose only that sanction which is the least severe way to
effect compliance with the court's discovery orders."  *Id.* at 300 (quoting *United States v.
Garrett*, 238 F.3d 293, 298 (5th Cir. 2000)).

ORDER – PAGE 14

### B.  adidas' Conduct Does Not Warrant Sanctions

As discussed, adidas' certifications under Rule 26 and its objections to discovery giving rise to Nafta's Rule 37 motion were both grounded in its interpretation of the Agreement.  While adidas cannot resist relevant discovery on that basis, it also does not merit punishment.  When reasonable minds can differ as to the interpretation of a contract, a party's opposition to discovery is substantially justified.  *See Popovich v. Sony Music Entertainment, Inc.*, 2006 WL 8454263, at *18 (N.D. Ohio 2006).  Certainly, considerable expense and effort could have been spared had adidas advised Nafta of its positions on various contract terms earlier in the discovery process.  However, failure to cooperate by the opposing party does not amount to prejudice sufficient to overcome substantial justification.  For example, in *Popovich*, the court denied sanctions even when discovery "took substantial time and effort from Plaintiffs before they ultimately obtained the information they sought," counsel employed "overly aggressive tactics," and "Defendant made no effort to facilitate an easy discovery process." *Id.*  Similarly here, adidas' reason for its certifications and objections is not outweighed by the burden on Nafta's time and resources.  Further, Nafta may seek an additional continuance should it need more time to review the newly produced discovery.  The traditional factors for sanctions weigh against Nafta, and the Court denies the motion.

### CONCLUSION

Because resolution of merits questions is improper at the discovery stage, adidas cannot resist discovery on grounds of contract interpretation alone, and the Court grants Nafta's motion to compel with respect to its requests for Inline channel data, W&D

ORDER – PAGE 15

Merchandise data, sample footwear inventory data, and records relating to Nafta and its affiliates as relevant to adidas' counterclaims.  adidas must produce discovery in a manner consistent with this opinion within 30 days of the date of this Order.

The Court otherwise denies the motion to compel.  Further, the Court overrules Nafta's objection to the Declaration of Greg Scott and denies Nafta's motion for sanctions.

Signed January 4, 2023.

David C. Godbey
Chief United States District Judge

ORDER – PAGE 16